**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 1-10-17

| |
|---|
| **MICHELLE BERRIO,** |
| **Plaintiff,** |
| **-against-** |
| **THE CITY OF NEW YORK, et al.,** |
| **Defendants.** |

**15-cv-09570 (ALC)**

**<u>OPINION AND ORDER</u>**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Michelle Berrio brings suit against the City of New York ("City") and an unknown number of John and Jane Doe Officers of the New York City Police Department ("NYPD"). Plaintiff alleges claims under 42 U.S.C. § 1983, the New York State Constitution, and common law, arising out of her arrest and detention in February 2015. The City has moved to dismiss the Complaint in its entirety for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the City's motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I.     Factual Background

The following facts are taken from the allegations in Plaintiff's Complaint, which are presumed to be true for purposes of this motion to dismiss.

On February 25, 2015, at approximately 4:55 p.m., someone called 911 to report that an African-American woman was assaulting a white woman and yelling racial slurs near the 145th Street subway station. ECF No. 1 (Complaint dated Dec. 8, 2015 ("Compl.")), at ¶ 16-17. A short time later, Plaintiff exited the 145th Street subway station on her way from work to her son's childcare provider. *Id.* ¶ 19-20. At approximately 5:15 p.m., Plaintiff was approached by

1

an NYPD Officer as she walked east on West 145th Street, talking on her cell phone. *Id.* ¶¶ 20-22. The NYPD Officer asked Plaintiff where she was coming from, and Plaintiff responded that she was walking from the 145th Street subway stop. *Id.* ¶¶ 23-24. The Officer then noted that a woman had been assaulted outside of that subway station and Plaintiff fit the description of the perpetrator. *Id.* ¶ 25. In response to the Officer's continued questions, Plaintiff repeatedly stated that she had not been involved in a fight. *Id.* ¶¶ 25-28. Nevertheless, the Officer directed Plaintiff "not to move" because a witness was arriving, presumably so that an identification could be made. *Id.* ¶ 29.

Some time later, an NYPD patrol car arrived with a woman, whom Plaintiff believes was the victim of the assault, sitting in the back seat. *Id.* ¶¶ 31-32. An NYPD Officer got out of the patrol car and told Plaintiff that she fit the description of the perpetrator, noting in particular that Plaintiff's coat and hat were black, when they were, in fact, both navy blue. *Id.* ¶ 34-37. This Officer also told Plaintiff that the victim had identified Plaintiff as her assailant, including by her pink cell phone cover. *Id.* ¶ 38. Plaintiff then was handcuffed, placed in the back seat of a patrol car, and driven to the police station. *Id.* ¶ 39. During the ride to the station, one of the Officers repeatedly asked Plaintiff why she "hit the woman," and Plaintiff repeatedly confirmed that she did not hit anyone. *Id.* ¶¶ 40-41.

Several hours later, at approximately 11:15 p.m., unnamed detectives in the NYPD's Hate Crimes Unit interviewed Plaintiff at the police station. *Id.* ¶ 48. Plaintiff does not describe the substance of that interview in the Complaint, but alleges that, following the interview, another NYPD Officer told Plaintiff that she did not match the victim's description of her assailant, who was wearing white sneakers and a hooded coat, while Plaintiff was wearing brown winter boots and a coat with no hood. *Id.* ¶¶ 49-51. Then, around 2:30 a.m. the following day,

2

Plaintiff, at the direction of unnamed NYPD Officers, put on her coat so that they could take her picture. *Id.* ¶ 52-53. Plaintiff was released from custody at 8:15 a.m. by an NYPD Officer who said that the assault victim told police that Plaintiff was not her assailant. *Id.* ¶ 57.

In the interim, NYPD Officers released a "report" to unidentified media outlets "stating that [P]laintiff was arrested for assault as a hate crime and would be arraigned later that morning." *Id.* ¶ 56. For reasons that are not clear from the face of the Complaint, Plaintiff believes that the NYPD made this statement at approximately 6:00 a.m.—after, Plaintiff contends, her innocence had been established. *Id.* ¶ 56. The NYPD report appeared in "several online news articles" which stated that Plaintiff "yelled anti-white slurs, grabbed the victim by the hair, and reportedly slammed her into a light pole." *Id.* ¶ 58. Several publishers have since corrected their stories, but it remains possible to find articles online identifying Plaintiff as the assailant, including on at least one white supremacist website. *Id.* ¶¶ 59-61. Plaintiff alleges that this negative media attention has caused her emotional distress, embarrassment, and harm to her reputation. *Id.* ¶¶ 62-63.

## II.     Procedural History

Plaintiff initiated this action by filing a Complaint on December 8, 2015. ECF No. 1. In the Complaint, Plaintiff alleges nine causes of action arising out of her arrest and detention on February 25, 2015 and subsequent statements by NYPD Officers: (1) violations of her constitutional rights pursuant to § 1983; (2) violations of her rights under the New York State Constitution; (3) false imprisonment; (4) intentional infliction of emotional distress; (5) negligence; (6) negligent infliction of emotional distress; (7) defamation; (8) slander *per se*; and (9) negligent hiring, training, and supervision. Compl. ¶¶ 68-101. Plaintiff also contends

that the City is liable for the actions of the John and Jane Doe NYPD Officers under the doctrine of *respondeat superior*. *Id.* ¶ 102-04.

On April 19, 2016, Defendant City of New York, the only named defendant in the action, moved to dismiss the Complaint. ECF Nos. 11 (Motion to Dismiss), 12 (Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint ("Def's Memo.")), 13 (Declaration of Tavish C. DeAtley ("DeAtley Decl.")). Plaintiff filed her response on May 17, 2016, ECF No. 15 (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl's Memo.")), and the City submitted its reply on May 31, 2016, ECF No. 16 (Defendant's Reply in Further Support of Its Motion to Dismiss ("Def's Reply")). Accordingly, the Court considers the motion fully submitted.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*,

516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I.      False Imprisonment

In her first, second, and third causes of action, Plaintiff alleges a state law false imprisonment claim in addition to alleging that her New York State and U.S. constitutional rights were violated by virtue of her arrest without probable cause. A claim under § 1983 or the New York State Constitution for false arrest is "substantially the same" as a claim for false arrest/false imprisonment under New York law. *Matthews v. City of New York*, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003)). Under both state and federal law, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted). As a result, the parties here focus their arguments on whether the Complaint contains facts sufficient to support a finding of probable cause to arrest Plaintiff. For the reasons that

follow, the Court finds that the NYPD Officers lacked actual probable cause at the time Plaintiff was arrested and cannot determine, based on the pleadings alone, whether the Officers are entitled to qualified immunity.

### A.      Probable Cause

Probable cause to arrest someone exists when "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852) (internal quotation marks and emphasis omitted). The probable cause inquiry is limited to "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)) (internal quotation marks omitted).

At the time Plaintiff was taken into NYPD custody, the NYPD Officers were aware that the assailant was an African-American woman, wearing a black coat, black hat, and carrying a cell phone with a pink cover. Compl. ¶¶ 17, 36, 38. The Officers also knew that the assault took place outside of the 145th Street subway station. *Id.* ¶ 16. The Complaint is somewhat unclear as to whether the Officers knew at the time of Plaintiff's arrest that the assailant was wearing white sneakers and a hooded coat. *Id.* ¶¶ 49-50. Plaintiff concedes that she is an African-American woman, who was wearing a dark (navy) coat and hat and speaking on a cell phone with a pink cover as she walked along 145th Street approximately 20 minutes after the assault took place. *Id.* ¶¶ 19-21; Pl's Memo. at 1. Moreover, she confirmed to the NYPD Officer who stopped her that she was walking from the 145th Street subway station, the location of the assault. Compl. ¶ 23-24. However, she notes that her coat did not have a hood and she was wearing brown boots, not white sneakers. Compl. ¶ 51.

Plaintiff contends that, without the hood and footwear description, the information NYPD Officers had at the time of her arrest was so vague as to render it insufficient as a matter of law to support probable cause. She alternatively argues that her shoes and lack of hooded coat, and perhaps also her coat and hat color, were sufficiently distinguishable from the description of the assailant to render her arrest unsupported by probable cause. Pl's Memo. at 7-9. The Court agrees.

Assuming that the NYPD Officers had only a description of the assailant's race, gender, and hat, coat, and cell phone color, these facts were insufficient to support the Officers' probable cause to arrest Plaintiff. Where, as here, a description "could have applied to any number of persons" and does not single out Plaintiff as the suspect, probable cause is not established. *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007). Race and gender often are rejected as insufficient bases for probable cause. *See, e.g.*, *United States v. Rosario*, 543 F.2d 6, 8 (2d Cir. 1976); *see also Dancy v. McGinley*, 843 F.3d 93, 109 (2d Cir. 2016) ("thin, black male" in brown jacket was too vague to support reasonable suspicion for stop). Wearing a dark hat and coat in the middle of winter also is unremarkable. *See, e.g.*, *Boley v. Durets*, No. 12-cv-4090 (ARR) (JO), 2013 WL 6562445, at *4 (E.D.N.Y. Dec. 10, 2013) ("jeans, blue shoes, a gray shirt, headgear of unknown color, and eyeglasses" was insufficient to establish probable cause); *Massillon v. Conway*, 574 F. Supp. 2d 381, 397-98 (S.D.N.Y. 2006) (in *dicta*, man in green jacket and jeans was insufficient to establish probable cause). Plaintiff's confirmation to the Officer that she was walking from the scene of the crime approximately 20 minutes after the assault occured might sufficiently narrow the universe of potential suspects if the scene of the crime were not a New York City subway station during rush hour. *See United States v. Fisher*, 702 F.2d 372, 376 (2d Cir. 1983) (court should consider whether location and time of day

"increase the likelihood that the individual suspected is the person sought"). Assuming, alternatively, that the NYPD Officers also believed that the assailant was wearing a hooded coat and white sneakers, these descriptions did not match Plaintiff and therefore cannot bolster the relatively vague description of the suspect.

The City argues that the victim's identification of Plaintiff as her assailant from the backseat of the patrol car also should be considered in support of the Officers' probable cause to arrest Plaintiff. Def's Memo. at 7-8. However, in the Complaint, Plaintiff alleges only that an NYPD Officer told her that the victim identified her as the assailant, not that the victim herself made the identification. *See* Compl. ¶ 38. To counter that artful pleading, the City offers as exhibits to its motion a news article and related video in which Plaintiff told the press that the victim had identified her as the assailant from the back of the patrol car. Def's Memo. at 5 (citing DeAtley Decl., Exs. C-D). Contrary to the City's contention, however, Plaintiff's discussion of articles that contained inaccurate details of her false arrest does not mean that this particular article, in which Plaintiff had an opportunity to "speak[] out after [her] wrongful arrest" to correct the record, was incorporated by reference. *See* DeAtley Decl., Ex. C. Nor can the Court take judicial notice of the documents for the purpose the City would have the Court use them. The City offers the news article and video for the truth of Plaintiff's statements regarding the witness' identification; that is, to prove that the witness' identification was part of the NYPD Officers' probable cause to arrest Plaintiff. When taking judicial notice of documents outside of the pleadings, they "may properly be considered only for what they contain, not to prove the truth of their contents." *Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007) (citation and internal quotation marks omitted). Accordingly, Plaintiff's claims related to her false arrest are not dismissed due to the lack of probable cause apparent on the face of the Complaint. The Court

also declines to convert the motion to dismiss into a motion for summary judgment so that it may

consider the City's exhibits.

**B.      Qualified Immunity**

The City also argues that, even if the NYPD Officers did not have probable cause to

arrest Plaintiff, there was "arguable probable cause" sufficient to entitle these Officers to

qualified immunity.  Def's Memo. at 10-13.  Generally, qualified immunity will shield a police

officer from liability if "(1) his conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known, or (2) it was objectively

reasonable for him to believe that his actions were lawful at the time of the challenged act."

*Jenkins*, 478 F.3d at 87 (citation and internal quotation marks omitted).  As to the first

consideration, there is "no doubt" that the right to be free from arrest without probable cause is

clearly established.  *Id.*  As to the second, in the false arrest context, an officer is subject to

qualified immunity if arguable probable cause existed at the time of the arrest.  *Id.*  The Court of

Appeals has cautioned that "arguable" probable cause does not mean "almost" probable cause,

however.  *Id.*  Rather, the "essential inquiry in determining whether qualified immunity is

available to an officer accused of false arrest is whether it was objectively reasonable for the

officer to conclude that probable cause existed."  *Id.* (citing *Anderson v. Creighton*, 483 U.S.

635, 644 (1987) and *Saucier v. Katz*, 533 U.S. 194, 207 (2001)).

The Court already has determined that, based on the facts alleged in the Complaint, the

Officers did not have probable cause to arrest Plaintiff because the description of the suspect—to

the extent it matched Plaintiff—could have applied to a large swath of the population.  While the

City may develop facts during discovery that support the conclusion that the NYPD Officers had

probable cause to arrest Plaintiff, or at least are entitled to qualified immunity, the Court cannot,

based on the pleadings alone, determine that it was objectively reasonable for the Officers to

conclude that the relatively generic description of the suspect constituted probable cause to arrest Plaintiff. *See Boley*, 2013 WL 6562445, at *5 (lack of probable cause prevented court from determining whether there was arguable probable cause on motion to dismiss) (citing *Biswas v. City of New York*, 973 F. Supp. 2d 504, 521 (S.D.N.Y. 2013)); *Bouche v. City of Mount Vernon*, No. 11-cv-5246 (SAS), 2012 WL 987592, at *7 (S.D.N.Y. Mar. 23, 2012) (same).

## II.    Unreasonable Search and Seizure

Plaintiff also alleges that she was subject to unreasonable search and seizure in violation of the United States and New York State constitutions. *See* Compl. ¶¶ 69(a), 74(a).  It is not entirely clear which aspects of her interaction with the NYPD Plaintiff is challenging.  However, to the extent Plaintiff is challenging any search conducted after her arrest, that claim survives the City's motion to dismiss because, taking as true the facts alleged in the Complaint, the NYPD Officers arrested Plaintiff without probable cause.  A lawful arrest supported by probable cause is required to justify any search incident to it. *See Virginia v. Moore*, 553 U.S. 164, 176-77 (2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).  As the lawfulness of Plaintiff's arrest was the sole basis for the City's motion to dismiss Plaintiff's search and seizure claims, this aspect of the motion is denied.

The Fourth Amendment's prohibition against unreasonable seizures also forms the basis of malicious prosecution and excessive force claims. *See Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (malicious prosecution); *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (excessive force).  Assuming that Plaintiff's reference to "unreasonable search and seizure" relates to Plaintiff's claims for either malicious prosecution or excessive force, *see* Compl. ¶¶ 69(d)-(e); 74(c), (e)-(f), the claim is dismissed for the reasons discussed below.

### III.    Due Process

The City's arguments regarding Plaintiff's due process claims also are based on the existence of probable cause to arrest Plaintiff. *See* Def's Memo. at 15. As discussed above, taking as true the facts alleged in the Complaint, the NYPD Officers lacked probable cause to arrest Plaintiff. Accordingly, the existence of probable cause cannot form the basis for the dismissal of Plaintiff's state and federal due process claims. The Court declines to consider the claims abandoned based on Plaintiff's failure to specifically address this aspect of the City's motion to dismiss.

### IV.    Equal Protection

Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶ 69(g).[1] To state a claim for relief under § 1983 for an equal protection violation, proof discriminatory intent is required. *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000). The Complaint is devoid of any allegations that Defendants were motivated by racial, gender, or other bias in their conduct towards Plaintiff. Accordingly, Plaintiff's equal protection claim is dismissed.

### V.    Malicious Prosecution

In opposing the City's motion to dismiss, Plaintiff does not address the arguments regarding her malicious prosecution claims. *See* Def's Memo. at 14; Compl. ¶¶ 69(d)-(e), 74(e)-(f). The City again urges the Court to view the claims as abandoned. *See* Def's Reply at 2. Even if the Court does not consider Plaintiff's malicious prosecution claims abandoned, they must be dismissed. To state a claim for malicious prosecution, a plaintiff must allege, among

---

[1] The City mistakenly asserts that Plaintiff's equal protection claim is based on both the New York State Constitution and the U.S. Constitution. *See* Def's Memo. at 15. Plaintiff brings only a federal claim, however. *See* Compl. ¶ 69(g).

other things, "the initiation or continuation of a criminal proceeding against [her]." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Here, Plaintiff alleges that, after spending the night in custody, she was told that she was "free to leave." Compl. ¶ 57. Plaintiff does not allege that she was charged with a crime or that anyone initiated proceedings against her. In fact, the basis for Plaintiff's slander and defamation claims is that NYPD Officers *falsely* stated that Plaintiff was going to be charged with assault. *See* Pl's Memo. at 12. Accordingly, Plaintiff's malicious prosecution claims are dismissed.

## VI.    Excessive Force

Plaintiff's final constitutional claim is for excessive use of force in violation of her rights under the New York State Constitution. While the City argues that Plaintiff's State constitutional claims should be dismissed for a variety of reasons, it does not specifically address the merits of Plaintiff's excessive force claim. *See* Compl. ¶ 74(c). Nevertheless, the Complaint contains no allegations regarding any use of force, reasonable or otherwise, against Plaintiff, and the cause of action is dismissed for that reason.

## VII.   Negligence

In her fifth cause of action, Plaintiff alleges that the unnamed NYPD Officers were negligent in their failure "to perform their duties with the degree of care that a reasonably prudent and careful officer would have used under similar circumstances." Compl. ¶ 84. The City moves to dismiss this claim on the basis that New York does not recognize a cause of action for negligence based on the allegation that police officers failed to exercise due care when carrying out their official duties. Def's Memo. at 17. In response, Plaintiff asserts that the City "misstate[s] the nature of [her] negligence claim;" however, in attempting to clarify the basis for this claim, Plaintiff continues to be quite imprecise. Pl's Memo. at 19. She states that her

negligence claim is based on "the negligent conduct of the as-of-yet-[un]identified Defendant officers during the course of their interactions with her and in releasing the media alert about her." *Id.*

The conduct of NYPD Officers "during the course of their interactions with [Plaintiff]" is at least partially covered by the claim Plaintiff asserts under the traditional tort remedy of false arrest/false imprisonment. "[U]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest." *Harley v. City of New York*, No. 14-cv-5452 (PKC), 2016 WL 552477, at *2 (E.D.N.Y. Feb. 10, 2016) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotation marks omitted); *see also Mesa v. City of New York*, No. 09-cv-10464 (JPO), 2013 WL 31002, at *33 (S.D.N.Y. Jan. 3, 2013).

The portion of Plaintiff's negligence claim based on the NYPD "releasing the media alert about her" is duplicative of her defamation and slander causes of action, which are discussed further below. The facts underlying each claim are the same, and courts in this Circuit routinely dismiss New York common law negligence claims where they seek damages for harm to reputation or damages flowing from that harm. *See Chao v. Mount Sinai Hosp.*, No. 10-cv-2869 (HB), 2010 WL 5222118, at *11-12 (S.D.N.Y. Dec. 17, 2010) (noting that rule applies "broadly" even where plaintiff does not specifically state that damages result from injury to reputation), *aff'd*, 476 F. App'x 892 (2d Cir. 2012); *Lucking v. Maier*, No. 03-cv-1401 (NRB), 2003 WL 23018787, at *7 (S.D.N.Y. Dec. 23, 2003). Therefore, Plaintiff's negligence claim is dismissed.

## VIII.   Negligent and Intentional Infliction of Emotional Distress

As her fourth and sixth causes of action, Plaintiff alleges that Defendants inflicted emotional distress both intentionally and negligently. *See* Compl. ¶¶ 79-81, 86-89. To state a

claim for negligent infliction of emotional distress ("NIED") in New York, a plaintiff must allege: "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297-98 (S.D.N.Y. 2015) (citation and internal quotation marks omitted). Intentional infliction of emotional distress ("IIED") claims require a plaintiff to allege the same elements as an NIED claim with the additional requirement that the defendant must have an "intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (citation and internal quotation marks omitted). The basis for Plaintiff's NIED claim is not clear from the face of the Complaint and, in response to the City's motion to dismiss, Plaintiff only addresses her IIED claim. Pl's Memo. at 19. To the extent her NIED claim is based on the same conduct as her IIED claim—the "unconstitutional stop and unlawful detention"—both claims are dismissed. *Id.*

The Court of Appeals has observed that "the standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" *Conboy*, 241 F.3d at 258 (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)). The same is true of NIED claims. *Green*, 96 F. Supp. 3d at 298. To support an emotional distress claim, the alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy*, 241 F.3d at 258 (citation and internal quotation marks omitted). With this "rigorous" standard in mind, courts in this Circuit have dismissed claims based on unlawful arrests as insufficiently "outrageous" or "extreme." *See, e.g., Sullivan v. Andino*, No. 09-cv-3668 (VB), 2012 WL 4714766, at *7 (S.D.N.Y. Sept. 18, 2012) (granting summary judgment to defendants based on false arrest although questions of fact remained as to whether

officers had probable cause to arrest); *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (IIED claim based on arrest without probable cause dismissed even though arresting officer punched plaintiff).

Moreover, as with Plaintiff's negligence claim, New York does not recognize NIED or IIED causes of action where the conduct underlying them may be addressed through traditional tort remedies, such as false arrest. *See Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015); *Sorrell v. Cty. of Nassau*, 162 F. Supp. 3d 156, 172 (E.D.N.Y. 2016); *Lee v. McCue*, 410 F. Supp. 2d 221, 226-27 (S.D.N.Y. 2006). Plaintiff's NIED and IIED claims are dismissed for this reason as well.

## IX.    Defamation and Slander *Per Se*

Plaintiff pleads causes of action for defamation and slander *per se* under New York law based on the allegation that the John and Jane Doe Defendants "knowingly released false information about plaintiff to the news media, accusing her of hate crimes." Compl. ¶ 91 (defamation claim); *see also id.* ¶ 96 (slander claim based on accusation of "a serious crime"). Specifically, Plaintiff alleges that unnamed members of the NYPD told the press that she "was arrested for assault as a hate crime and would be arraigned later that morning." *Id.* ¶ 56.

In New York, "[m]aking a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion or disgrace constitutes defamation." *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 584 (2012). To state a cause of action for slander, a defamatory statement made orally rather than in writing, a plaintiff must allege: "(i) a defamatory statement of fact (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander *per se*, and (vii) not protected by privilege." *Germain v. M & T Bank Corp.*,

111 F. Supp. 3d 506, 534 (S.D.N.Y. 2015) (quoting *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001)) (internal quotation marks omitted).

The City focuses its argument on the first half of the alleged statement—that Plaintiff was arrested for assault as a hate crime—and argues that the statement is true. Def's Memo. at 18-19. However, this argument ignores the second half of the sentence which asserted that Plaintiff was going to be arraigned, presumably on the charges for which she was arrested. Compl. ¶ 56. With respect to the first half of the sentence, the City is correct that, as alleged, the statement that Plaintiff was arrested for assault is true. Therefore, it cannot be defamatory as a matter of law because, "[u]nder New York law, it is 'fundamental that truth is an absolute, unqualified defense to a civil defamation action.'" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986)). The fact of Plaintiff's arrest is true regardless of whether anyone in the NYPD subsequently learned that Plaintiff was not the assailant. However, with respect to the second half of the NYPD's statement, Plaintiff alleges that, at the time the NYPD released this information, they knew that she was not the perpetrator. *See* Compl. ¶¶ 49-50, 56. If members of the NYPD knew Plaintiff was no longer a suspect, it was incorrect to state that she was going to be arraigned later that day.

Plaintiff's allegation that the statement was made after she was no longer a suspect also defeats the City's argument that the statement is protected by qualified privilege. As a general matter, a statement may be protected by a qualified privilege "when it is fairly made by a person in the discharge of some public or private duty, legal or moral." *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011) (quoting *Rosenberg v. MetLife, Inc.*, 8 N.Y.3d 359, 365 (2007)) (internal quotation marks omitted). However, if the statement was made with malice—that is, spite, ill will, or a knowing or reckless disregard of a statement's falsity—the privilege does not attach.

*Id.* at 815 (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 437-38 (1992) and *Rosenberg*, 8 N.Y.3d at 365). Because Plaintiff allegedly was no longer a suspect in the assault, it is reasonable to infer that whoever made the statement either knew that Plaintiff was not going to be arraigned or recklessly disregarded the falsity of his statement to the contrary.

The City's reliance on *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 583 (S.D.N.Y. 2002) for the proposition that "[s]tatements made by police officers during an investigation that are germane to the investigation are protected by qualified privilege, even if erroneous" is misplaced. Def's Reply at 8. There, an officer reported over radio to the police department that he was investigating a complaint involving the plaintiff, which was a true statement. 206 F. Supp. 2d at 583. By contrast, here, drawing all reasonable inferences in Plaintiff's favor, the investigation was over as it related to Plaintiff by the time the alleged statement was released to the press. *Cf. Kramer v. City of New York*, No. 04-cv-0106 (HB), 2004 WL 2429811, at *8 (S.D.N.Y. Nov. 1, 2004) (dismissing libel and slander claims against police officers who made statements to newspapers regarding investigation of plaintiff for poisoning her husband during investigation, but before charges were dismissed). Accordingly, Plaintiff's defamation and slander claims based on the alleged statement that Plaintiff "would be arraigned later that morning" survive the City's motion to dismiss.

## X.    Negligent Hiring, Training, and Supervision

Both parties agree that a claim for negligent hiring, training, and supervision requires Plaintiff to show that the individual tortfeasors were not acting within the scope of their employment. Def's Memo. at 19-20; Pl's Memo. at 20; *see also Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 521-22 (S.D.N.Y. 2015) (collecting cases). The City's only argument in support of dismissing this claim is that Plaintiff alleges that the unnamed NYPD Officers were

acting within the scope of their employment. Def's Memo. at 19-20. However, Plaintiff alleges

that the John and Jane Doe NYPD Officers were acting within the scope of their employment

"except, upon information and belief, [when] dealing with the media." Compl. ¶ 13.

Accordingly, the City may be held liable for negligent hiring, training, or supervision with

respect to any slander proven, assuming Plaintiff also proves the other elements of the claim,

which the City has not challenged in its motion.

## XI. Claims against the City of New York Based on *Respondeat Superior* Theory

Finally, Plaintiff alleges that the City should be held liable for the actions of individual

NYPD Officers under the doctrine of *respondeat superior*. Compl. ¶¶ 102-04. The doctrine of

*respondeat superior* "renders a master vicariously liable for a tort committed by his servant

while acting within the scope of his employment." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433,

455 (S.D.N.Y. 2012) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)) (internal

quotation marks omitted). It is applicable only to state law claims, however. *See Samuels v.*

*Fischer*, 168 F. Supp. 3d 625, 635 (S.D.N.Y. 2016); *Biswas*, 973 F. Supp. 2d at 539.[2] Here,

Plaintiff's only surviving state law causes of action are for false imprisonment, defamation, and

slander. Plaintiff explicitly alleges the unnamed NYPD Officers slandered her outside the scope

of their employment, Compl. ¶ 13, and accordingly, the City cannot be held liable for that

conduct. The City can be held liable for the false imprisonment claim, however.

## XII. Leave to Amend

The City does not ask the Court to dismiss Plaintiff's claims with prejudice and, as a

general matter, leave to amend should be "freely given." Fed. R. Civ. P. 15(a)(2). However,

leave to amend may appropriately be denied if "the proposed amendment is futile." *Lucente v.*

---

[2] Plaintiff does not assert a *Monell* claim. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

*Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Any amendment to bolster Plaintiff's state law claims that the Court has dismissed as duplicative of her surviving tort law false imprisonment claim would be futile.  *See Kropelnicki v. Siegel*, 290 F.3d 118, 130-31 (2d Cir. 2002).  Accordingly, Plaintiff will not be granted leave to amend her negligence and emotional distress causes of action.

## CONCLUSION

For the reasons set forth above, the City's motion to dismiss the Complaint is granted in part and denied in part as follows:  Plaintiff's causes of action under the Equal Protection Clause and for malicious prosecution, excessive use of force, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress are dismissed without prejudice except as identified above.  Plaintiff's causes of action for defamation, slander *per se*, and negligent hiring, training, and supervision are dismissed in part.  Plaintiff's common law cause of action for false imprisonment and related claims under the United States and New York State constitutions are not dismissed.

The Court will hold a status conference in this matter on January 30, 2017, at 10:15 a.m. The parties (and/or counsel) should appear in person in Courtroom 1306 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY, on the date and time specified above.

**SO ORDERED.**

Dated: January 9, 2017
      New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**

19