UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------ X

MICHELLE BERRIO,

                                     Plaintiff,

      -against-

THE CITY OF NEW YORK, a municipal entity; New York
City Police Officer GELLISON FLORES; New York City
Police Officer TOMMY KEUNG; New York City Police
Officer JOSEPH FINAMORE; New York City Police
Detective THOMAS FISCH; New York City Police
Detective BRIAN SESSA (Shield No. 6386); New York City
Police Detective NICOLE CARTER; and "JOHN and/or
JANE DOES" 1, 2, 3, etc. (whose identity are unknown but
who are known to be personnel of the New York City Police
Department), all of whom are sued in their individual and
their official capacities.

                                  Defendants.

------------------------------------------------------------------------------ X

**AMENDED**
**COMPLAINT**

**JURY TRIAL**

No. 15-cv-9570-ALC-
RWL

        Plaintiff MICHELLE BERRIO, by her attorneys, Beldock Levine & Hoffman LLP, as and

for her amended complaint against the defendants alleges as follows:

**PRELIMINARY STATEMENT**

1.  This civil rights action seeks redress under 42 U.S.C. § 1983 and New York State law for

injuries Plaintiff suffered from the unconstitutional conduct of defendants the City of New York,

New York City Police Department ("NYPD") Officer Gellison Flores, NYPD Officer Tommy

Keung, NYPD Officer Joseph Finamore, NYPD Detective Thomas Fisch, NYPD Detective Brian

Sessa, NYPD Detective Nichole Carter, and NYPD Officers "JOHN and/or JANE DOES" 1, 2, 3, etc.

2.     On February 25, 2015, plaintiff was walking on 145th Street in Manhattan, towards her three-year-old son's daycare facility, when she was stopped by defendant NYPD officer Flores. Plaintiff was subsequently wrongfully arrested for an assault which occurred in the area earlier that afternoon, at a time plaintiff was on the subway. She was held at the 30th Precinct overnight and released the following morning after spending approximately 15 hours in custody. Upon information and belief, after evidence emerged establishing plaintiff's innocence, but prior to her release, members of the NYPD alerted the media that plaintiff was being charged with assault as a hate crime. Several articles stating that plaintiff assaulted a white woman while screaming racial epithets appeared and continue to appear on news websites.

3.     Plaintiff seeks redress for substantial injuries she suffered when she was unlawfully arrested and detained. Plaintiff seeks (i) compensatory damages for psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional law; and (iii) such other and further relief, including costs and attorney's fees, as this Court deems equitable and just.

**JURISDICTION**

4.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

5.     Supplemental jurisdiction is conferred upon this Court by 28 U.S.C. § 1367(a) over any and all state law claims that are so related to the federal claims that they form part of the same case or controversy.

**VENUE**

6. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to plaintiff's claims took place.

**JURY DEMAND**

7. Plaintiff demands a trial by jury in this action on each and every one of her claims for which jury trial is legally available.

**THE PARTIES**

8. Plaintiff MICHELLE BERRIO is a citizen of the United States and the State of New York, and was at all times relevant to this complaint a resident of the State of New York, the City of New York, and the County of New York.

9. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

10. The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11. Defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and JOHN and/or JANE DOE 1, 2, 3, etc. ("DOES") are NYPD Police Officers who unlawfully detained plaintiff without any suspicion of illegal activity, lodged false criminal charges against her, and released false information to the news media.

12. Upon information and belief, defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and DOES are still NYPD Police Officers.

3

13.     At all times relevant herein, defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and DOES have acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or officers of the City and/or the NYPD, except, upon information and belief, that in dealing with the media they were not acting within the scope of their obligations, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

14.     At all times relevant herein, defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and DOES violated clearly established rights and standards under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in their circumstances would have known.

## STATEMENT OF FACTS

15.     Plaintiff is a single mother, a lifelong New York City resident, and an employee of the City of New York's Human Resource Administration ("HRA").

16.     Upon information and belief, on or about the evening of February 25, 2015, at approximately 4:55 P.M., 911 dispatchers received a call reporting an assault on the corner of West 145th Street and St. Nicholas Avenue, outside the 145th Street A, B, C, D subway entrance.

17.     Upon information or belief, the 911 caller reported an African-American woman beating up a white woman and yelling racial slurs.

18.     At approximately 4:30 P.M., Plaintiff finished an HRA field visit in the Bronx and took a train to Manhattan.

19.     At approximately 5:05 P.M, plaintiff exited the 145th Street A, B, C, and D subway station.

20.     Plaintiff then walked east on West 145th Street toward her son's child care provider.

21.     As plaintiff walked down the street, she was talking on her cell phone, which was covered with a pink protective case.

22.     At approximately 5:09 P.M., a radio run went out to NYPD officers in the vicinity of the 145th Street subway entrance, describing the suspected assailant a female in her 50s, wearing a large black coat.

23.     At the time of this incident, plaintiff was in her 30s and wearing a knee length navy blue peacoat.

24.     At approximately 5:15 P.M., plaintiff was approached by  defendant Flores.

25.     Defendant Flores stopped plaintiff and asked her where she was coming from.

26.     Plaintiff responded, in sum and substance, "The 145th Street subway stop."

27.     Defendant Flores responded, in sum and substance, "A young woman had been assaulted outside that stop and you fit the description. Have you been in a fight?"

28.     Plaintiff responded, that she had not been in a fight.

29.     Unconvinced, defendant Flores asked plaintiff if she was sure.

30.     Plaintiff responded, in sum and substance, "Absolutely. I wasn't in a fight."

31.     Defendant Flores then ordered the plaintiff not to move because a witness was coming.

32.     Plaintiff stated, in sum and substance, "Please hurry. I have to pick up my son."

33.     Approximately ten minutes after defendant Flores initially stopped plaintiff, a marked NYPD patrol car driven by defendant Keung pulled up to the area where plaintiff was detained.

34.     Upon information and belief, the woman who was assaulted outside the 145th Street station was in the back of the patrol car.

35.     Upon information and belief, the woman who was assaulted suffered a concussion and had not received medical treatment at this time.

36.     Defendant Keung exited the patrol car and approached plaintiff.

37.     Defendant Keung stated to plaintiff, in sum and substance, "You fit the description of the person who was in the fight."

38.     Defendant Keung gestured with his hand toward plaintiff and stated, in sum and substance, "Black hat and black coat."

39.     Plaintiff was wearing a navy hat and a wool navy coat.

40.     Defendant Keung then stated, in sum and substance, "The victim identified you 100% down to your pink cell phone cover."

41.     Neither the NYPD radio run nor the defendant officers' memo books contain any information about a cell phone or a cell phone case cover.

42.     Plaintiff was handcuffed, taken to the back of the patrol car, and driven to the 30th precinct.

43.     During the ride to the precinct, defendant Keung repeatedly asked plaintiff, in sum and substance, "Why did you hit the woman?"

44.     Plaintiff responded in sum and substance, "I didn't hit anyone."

45.     At this time, the officers had not read plaintiff her *Miranda* rights.

46.     Plaintiff asked defendants Keung and Flores, in sum and substance, "Shouldn't you read me my rights."

47.     Officer Keung responded, in sum and substance, "You don't know this job."

48.     When plaintiff arrived at the precinct, the officers took her fingerprints, her mugshot, and inspected her hands and mouth.

49.     Defendant Finamore is named as the arresting officer in the NYPD arrest report.

50.     While in custody, plaintiff asked several officers, on several occasions, to review the video recorded by the NYPD surveillance camera on the corner of St. Nicholas Avenue and West 145th Street. Plaintiff stated, in sum and substance, "That video will prove that I didn't do it."

51.     Upon information and belief, officers at the 30th Precinct did not immediately review the video.

52.     At approximately 11:15 PM, plaintiff was taken to a room and interviewed by detectives from the NYPD's Hate Crimes Unit.

53.     Following this meeting, defendant Finamore told plaintiff, in sum and substance, that she did not fit the description the victim gave of her assailant.

54.     The Officer told plaintiff, in sum and substance "the assailant was wearing white sneakers and her coat had a hood."

55.     Plaintiff was wearing brown winter boots and her coat did not have a hood.

56.     Defendant Finamore also made statements questioning the veracity of plaintiff's arrest.

57.     At approximately 2:30 A.M., officers ordered plaintiff to put on her coat so that they could take her picture.

58.     Plaintiff complied with the officers' order.

59.     At approximately 3:05 AM, defendants Fisch and Carter reviewed video of the assault that occurred outside the 145th Street subway station and identified inconsistencies between plaintiff and the assailant.

60.     During the course of plaintiff's detainment, she repeatedly asked several members of the NYPD for a glass of water.

61.     Plaintiff was not given water until approximately 5 A.M, 12 hours after she was taken into custody.

62.     Upon information and belief, at approximately 6:00 A.M., after plaintiff's innocence was established, defendant Sessa, Detective from the NYPD office of Public Information, released a report to the media falsely stating that plaintiff was arrested for assault as a hate crime and would be arraigned later that morning.

63.     Defendant Sessa released this information approximately three hours after defendants Fisch and Carter viewed video showing that plaintiff was not involved in the assault outside the West 145th Street subway station.

64.      At approximately 8:15 A.M., an Officer at the 30th Precinct told plaintiff, in sum and substance, "the victim told the police that [plaintiff] was not the person who attacked her and she was free to leave."

65.     The City did not send out an email correcting its earlier message about plaintiff's arrest and subsequent arraignment until 2:23 P.M. on February 26th.

66.     Following plaintiff's release, several online news articles were published naming her and falsely stating that she "yelled anti-white slurs, grabbed the victim by the hair, and reportedly slammed her into a light pole."[1]

67.     Although several online publications have corrected their stories stating that plaintiff was falsely arrested, a Google search of plaintiff's name continues to return several uncorrected articles about her wrongful arrest.[2]

68.     Among the several websites that posted an article about the plaintiff's arrest is stormfront.org, whose banner reads "White Pride World Wide."[3]

69.     Another website that reposted the article, The Tree of Liberty, contains a comment section where one user wrote in response to the uncorrected article about plaintiff, "Some day [sic] the white boy is going to play Cowboys and whomever. Then the fun starts."[4]

70.     The media attention surrounding plaintiff's unlawful arrest has caused plaintiff extreme emotional distress, great discomfort in public settings, and has injured her reputation.

71.     Defendants' conduct caused plaintiff to suffer loss of liberty, emotional and psychological pain, embarrassment, humiliation, harm to her reputation, and deprived her of her constitutional rights.

## **COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW**

72.     Plaintiff served a Notice of Claim upon the City of New York by personal delivery on March 16, 2015, within ninety days of the events giving rise to her claim.

---

[1] John A. Oswald, *Don't Text and Bump, Bias Charges in White Woman Harlem Beat Down,* METRO, Feb. 26, 2015, http://www.metro.us/new-york/don-t-text-and-bump-bias-charges-in-white-woman-harlem-beat-down/zsJobz---zjOIDtNTXblXM/ (last visited Dec. 3, 2015).
[2] *See eg* Exhibits 1, 2, 3, 4, and 5.
[3] https://www.stormfront.org/forum/t1090349/ (last visited Dec. 3, 2015). *See also* Exhibit 4.
[4] http://www.thetreeofliberty.com/vb/showthread.php?211278-Social-Services-Worker-Attacks-White-Woman-Another-Dot (last visited Dec. 3, 2015).

73.     Plaintiff served an amended Notice of Claim upon the City of New York by personal delivery on April 3, 2015, within ninety days of the events giving rise to her claims.

74.     On May 21, 2015, plaintiff attended an examination pursuant to New York General Municipal Law § 50-h.

75.     More than thirty days have elapsed since plaintiff served her Notice of Claim and the City has not offered adjustment or payment of her claim.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Individual Defendant Officers' Violations of**
**Plaintiff's Fourth, Fifth, and Fourteenth Amendment Rights**

76.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

77.     In committing the acts and omissions complained of herein, defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and DOES acted under color of state law to deprive plaintiff of certain constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a.   the right to be free from unreasonable search and seizure;

   b.   the right to be free from arrest without probable cause;

   c.   the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent;

   d.   the right to be free from the lodging of false criminal charges against him by police officers; and

   e.

   f.   the right to be free from deprivation of liberty without due process of law;

78.     In committing the acts and omissions complained of herein, defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

79.     As a direct and proximate result of defendants' deprivation of plaintiff's constitutional rights, plaintiff suffered the injuries and damages set forth above.

80.     The unlawful conduct of defendant NYPD police officers DOES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### Violations of the New York State Constitution

81.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82.     Such conduct breached the protections guaranteed to plaintiff by the New York State Constitution, including but not limited to, Article 1, §§ 1, 6, 8, 11, and 12, and including the following rights:

  a.   freedom from unreasonable search and seizure of her person and property;

  b.   freedom from arrest without probable cause;

  c.   freedom from false imprisonment, that being wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which wrongful detention plaintiff was aware and did not consent;

  d.   freedom from the lodging of false charges against him by police officers and prosecutors, including on information and belief, by some or all of the individual defendants;

  e.   and

  f.   freedom from deprivation of liberty without due process of law.

83.     As a direct and proximate result of defendants' deprivations of plaintiff's rights, privileges, and immunities guaranteed by the New York State Constitution, plaintiff suffered the injuries and damages set forth above.

## THIRD CAUSE OF ACTION
### False Imprisonment

84.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     Defendant NYPD police officers Flores, Keung, Finamore, Fisch, Carter, and DOES, through the foregoing acts, caused plaintiff to be wrongfully detained without good faith, reasonable suspicion, or legal justification, and of which detention plaintiff was aware and to which he did not consent.

86.     Defendant NYPD police officers Flores, Keung, Finamore, Fisch, Carter, and DOES committed the foregoing acts intentionally, willfully, and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

## FOURTH CAUSE OF ACTION
### Defamation of Character

87.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

88.     Individual defendants, including defendants Finamore, Carter, Fisch, and Sessa, knowingly released false information about plaintiff to the news media, accusing her of hate crimes.

89.     The actions of the individual defendants damaged the reputation of plaintiff.

90.     The actions of defendants were performed with malice and disregard for the truth.

91.     As a result, plaintiff suffered defamation of character.

## FIFTH CAUSE OF ACTION
### Slander *Per Se*

92.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

93.     Individual defendants, including defendants Finamore, Carter, Fisch, and Sessa, knowingly released false statements about plaintiff to the news media, accusing her of a serious crime.

94.     The actions of the individual defendants damaged the reputation of plaintiff.

95.     The actions of defendants were performed with malice and disregard for the truth.

96.     As a result, plaintiff suffered harm to her character.

## SIXTH CAUSE OF ACTION
### Negligent Hiring, Training, and Supervision Under State Law;
### Defendant City of New York

97.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     The City is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants, and/or employees employed and/or the NYPD with regard to their aforementioned duties.

## SEVENTH CAUSE OF ACTION
### Respondeat Superior

99.     Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

100.    At all relevant times, defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and DOES were employees of the City and were acting within the scope of their employment.

101.   The City is therefore vicariously liable under the doctrine of *respondeat superior* for the actions of defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and set forth herein.

<u>**DEMAND FOR RELIEF**</u>

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a)   compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)   punitive damages from defendants Flores, Keung, Finamore, Fisch, Sessa, Carter, and Does to the extent allowable by law;

(c)   attorney's fees;

(d)   the costs and disbursements of this action;

(e)   interest; and

(f)   such other and further relief as this Court deems just and proper.

Dated: New York, New York
May 10, 2018

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26/PH Suite
New York, New York 10016
(212) 490-0400

_____
Keith Szczepanski

*Attorneys for Plaintiff Michelle Berrio*