USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 3-29-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELLE BERRIO,

           Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

           Defendants.

15-cv-09570 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Michelle Berrio brings this action against the City of New York ("City"), the New York City Police Department ("NYPD"), NYPD Officer Gellison Flores ("Flores"), NYPD Officer Tommy Keung ("Keung"), NYPD Officer Joseph Finamore ("Finamore"), NYPD Detective Thomas Fisch ("Fisch"), NYPD Detective Brian Sessa ("Sessa"), NYPD Detective Nichole Carter ("Carter"), and NYPD Officers "JOHN and/or JANE DOES" 1, 2, 3, etc. (collectively "defendants"). Plaintiff alleges claims under 42 U.S.C. § 1983 and New York state law arising out of her arrest and detention in February 2015. Defendants now move for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

**I.    Factual Background[1]**

    **A. The February 25, 2015 Arrest**

On February 25, 2015, at approximately 4:54 p.m., a 911 caller reported an assault on West 145th Street in New York, New York. D. 56.1, ¶ 10. After receiving a radio transmission

---

[1] These facts derive from the parties' Local Rule 56.1 Statements ("D. 56.1" and "P.56.1") and are undisputed unless noted otherwise. The Court will construe all disputed facts in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. *ING Bank N.V.* v. *M/V Temara*, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

1

reporting the assault in progress, Keung and Flores drove to the scene. *Id.* at ¶¶ 12-13. When Keung and Flores arrived, they spoke to the assault victim, Sara Benaway, who informed them that the assailant slammed her head against a pole. *Id.* at ¶¶ 14-16. Ms. Benaway described the perpetrator as a black female in her fifties, wearing a long black coat and a black hat. Ms. Benaway also informed the officers that the perpetrator fled eastbound on 145th Street. *Id.* at ¶ 21.

The Parties dispute Plaintiff's initial interaction with defendants. According to defendants, Flores and Keung left the scene of the incident to search for the perpetrator with Ms. Benaway in their patrol car. *Id.* at ¶¶ 20-21. At approximately 5:15 p.m., while driving eastbound on 145th Street, Ms. Benaway pointed out and identified plaintiff as the perpetrator. *Id.* at ¶ 23.[2]

Plaintiff claims Flores initially approached her alone on foot. Pl. 56.1, ¶ 87. It is undisputed that Plaintiff informed Flores that she was coming from the 145th Street subway station. D. 56.1, ¶¶ 26, 30. Flores asked Plaintiff if she had been in a fight. *Id.*, ¶ 91. Plaintiff responded "no", but Flores continued to question her. *Id.* at ¶¶ 92-93. Flores then told Plaintiff she matched the suspect's description and she was not free to leave. *Id.* at ¶¶ 94-95. Several minutes after Flores detained Plaintiff, Keung arrived in a patrol car with Ms. Benaway. *Id.* at ¶¶ 23, 98. Keung remained in the car for about a minute before exiting and meeting Flores for a brief conversation. *Id.* at ¶¶ 98-99. Keung then asked Plaintiff why she hit Ms. Benaway, to which Plaintiff responded she had never seen Ms. Benaway before. *Id.* at ¶ 100- 101. Keung returned to the patrol car and spoke to Ms. Benaway for approximately forty-five seconds. *Id.* at ¶ 102.

---

[2] At the time, plaintiff wore a dark jacket and dark hat. *Id.*, ¶ 34, 55.

It is undisputed that after speaking with Keung in the backseat of the patrol car, Ms. Benaway nodded her head up and down and confirmed plaintiff was the assailant. Pl. 56.1, ¶ 103; D. 56.1, ¶¶ 35-36. Following the identification, at 5:30 p.m., Keung exited the police car and placed plaintiff under arrest before the officers took plaintiff to the NYPD's 30th Precinct. Pl. 56.1, ¶¶ 104-105.

### B. The 30th Precinct

The events following the arrest are also in dispute. Defendants contend that Ms. Benaway once again identified Plaintiff as her assailant when Officer Finamore and Detective Fisch interviewed her at the precinct. D. 56.1, ¶¶ 44-45, 50-51. At some point while plaintiff was held in custody, defendants obtained and viewed video footage of the assault. Plaintiff contends that Defendants watched the video as early as 11:25 p.m., while Defendants claim Fisch did not watch the video until approximately 3:05 a.m. the following morning. Pl. 56.1, ¶106; D. 56.1, ¶ 58. At approximately 3:05 AM, Fisch filed a report noting that plaintiff's appearance was inconsistent with Ms. Benaway's assailant in the video. *Id.* at ¶ 117.

On February 26, 2015 at approximately 7:45 a.m., Detectives Carter and Fisch met with Ms. Benaway at her home and showed her the video. D. 56.1, ¶ 59. After viewing the video and enlarged photo-stills, Ms. Benaway recanted her identification and stated "[that's] definitely not the same girl that was arrested last night." Pl. 56.1, ¶ 60. Defendants then voided Plaintiff's arrest and released her from the 30th Precinct at 8:15 a.m. D. 56.1, ¶61.

### C. The Media

It is undisputed that the day after the incident, media outlets reported that plaintiff was arrested and charged with assault as a hate crime. D. 56.1, ¶ 62. The parties dispute how the media received this information. Plaintiff contends that at approximately 5:14 AM, after viewing

3

the video confirming Plaintiff's innocence, Detective Sessa sent out a media alert that mentioned Plaintiff by name and described her arrest and alleged hate crime assault. Pl. 56.1, ¶ 118. The media outlets then published reports describing Plaintiff's arrest and how she was to be arraigned on an assault as a hate crime charge. These reports were re-published on white supremacist websites. *Id.* at ¶ 62; *see* Pl's Ex. 9. Plaintiff claims these reports caused her predominately white neighbors to perceive her in a different light. *Id.* at ¶ 126. Plaintiff also claims the false reports caused an unknown person to come to her apartment building looking to harm her. *Id.* at ¶ 127.

## II. Procedural History

Plaintiff brought this action on December 8, 2015, initially against the City and unknown number of NYPD John and Jane Doe Officers alleging: (1) violations of her constitutional rights pursuant to § 1983; (2) violations of her rights under the New York State Constitution; (3) false imprisonment; (4) intentional infliction of emotional distress; (5) negligence; (6) negligent infliction of emotional distress; (7) defamation; (8) slander per se; and (9) negligent hiring, training, and supervision. ECF No. 1.

On April 19, 2016, the City moved to dismiss the Complaint. ECF No. 11. On January 10, 2017, the Court dismissed Plaintiff's Equal Protection, malicious prosecution, excessive use of force, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress claims. *Id.* Plaintiff's defamation, slander *per se*, and negligent hiring, training, and supervision claims were dismissed in part. *Id.* Plaintiff's common law claim for false imprisonment and related claims under the United States and New York State constitutions survived. ECF No. 21.

On May 10, 2018, Plaintiff filed an Amended Complaint that contained the surviving claims and added the named NYPD Officer defendants and claims under 42 U.S.C. § 1983 and

4

New York State law. Defendants filed answers to the Amended Complaint on July 5, 2018 and August 3, 2018. ECF Nos. 63 and 68.

On August 27, 2018, Defendants moved for summary judgment to dismiss the Amended Complaint in its entirety. Defendants argue that (1) the officers had probable cause to arrest Plaintiff; (2) Defendants are entitled to qualified immunity; (3) Plaintiff's state law claims are barred against the individual defendants; and (5) Plaintiff's claims for defamation and slander fail as a matter of law. ECF Nos. 69. Plaintiff filed its opposition on October 9, 2018 and Defendants filed their reply on November 1, 2018. ECF Nos. 75, 81.[3]

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "It is the movant's burden to show that no genuine factual dispute exists" and a court "must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). If the movant meets its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts" and "must come forward with 'specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89

---

[3] Plaintiff voluntarily dismissed their Equal Protection and Negligent Hiring, Training, and Supervision Claims in their Opposition Memo. ECF No. 75.

L.Ed.2d 538 (1986). The nonmoving party may not rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

## DISCUSSION

### I. False Arrest and Qualified Immunity

False arrest claims brought under § 1983 must be analyzed under the law of the state where the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). To prevail on a false arrest claim under New York law a plaintiff must plausibly allege that: "(1) the defendant intended to confine [her], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement [,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).

The Parties dispute the fourth element. A police officer makes a privileged arrest if it is based on probable cause. *Jocks,* 316 F.3d at 135; *see also Stansbury v. Wertman,* 721 F.3d 84, 89 (2d Cir. 2013).[4] Whether probable cause existed or not may be determined as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[P]robable cause is an absolute defense to a false arrest claim.'") (quoting *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir.2010)). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

---

[4] The Court will analyze probable cause before addressing qualified immunity since Plaintiff cannot allege a constitutional violation where probable cause justifies an arrest. *Panetta v. Crowley,* 460 F.3d 388, 394–95 (2d Cir.2006)

6

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted). In *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118–19 (2d Cir. 1995) *cert. denied*, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996), the Second Circuit affirmed the summary dismissal of a false arrest claim on the ground that there was probable cause for the arrest because the officer was directly advised by a store owner who was present during the crime and knew the criminal's identity, and the owner's veracity was not in doubt. *Id.* at 119. *See also Caldarola v. Calabrese*, 298 F.3d 156, 165 (2d Cir. 2002) ("[A]n identified citizen informant is presumed to be reliable") (citing *People v. Hetrick*, 80 N.Y.2d 344, 349, 590 N.Y.S.2d 183, 604 N.E.2d 732 (1992)).

Conversely, if the question of whether or not an arresting officer had probable cause is predominantly factual, as where there is a dispute as to the pertinent events, the jury should decide the existence of probable cause. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *see also Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir.1994); *Peterson v. Cty. of Nassau*, 995 F. Supp. 305, 313–14 (E.D.N.Y. 1998).

An arresting officer may also be protected by qualified immunity from a false arrest claim. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks omitted). An officer's probable cause determination is "objectively reasonable" if there was "arguable" probable cause to make the "arrest—that is, if officers of reasonable competence could disagree on whether the probable

cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (internal quotation marks omitted). With respect to false arrest, dismissal "is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589-93 (2018) (qualified immunity applies unless "existing precedent" places the unlawfulness "of the particular arrest beyond debate") (internal quotation marks omitted).

Here, there are no disputed material facts as to what ultimately lead to plaintiff's arrest. It is undisputed that Ms. Benaway identified plaintiff as her assailant less than an hour before the officers made the arrest. Def. 56.1, ¶¶ 10, 12, 13, 23. Furthermore, there is no allegation that the arresting officers had any reason to doubt her at the time. Therefore, the officers had probable cause to make the arrest.

Plaintiff alleges Officer Flores, based solely on vague information of the assailant's race, gender, clothes and relative age, approached her on foot and prevented her from leaving before the victim identified her. Pl. 56.1, ¶ 88. Plaintiff urges the Court to consider this initial stop as an arrest without probable cause since, despite the "arrest" lasting only "several minutes," Flores did not allow her to leave. *Id.* However, even if the Court credits Plaintiff's testimony, Flores had probable cause to make the temporary "arrest" based on the knowledge available to him. It would have been objectively reasonable to hold plaintiff for a few minutes before the victim could verify the officer's suspicion. The Court finds it difficult to imagine that reasonable competent officers would "disagree about the legality of [this] arrest." *Ricciuti,* 124 F.3d at 128. Furthermore, the fact that Defendants relied on the victim's later recanted identification did not extinguish the existence of probable cause. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 161

(2d Cir. 2010) ("Probable cause may also exist where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it."); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (officer can rely on information from victim or witness absent reason to doubt that person's veracity). *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 527 (S.D.N.Y. 2015) (witness's later recantation irrelevant because probable cause was determined based on information officers had at time of arrest). The Court finds it was reasonable to arrest the plaintiff until the victim could confirm or deny her assailants identity. As a result, Defendants had probable cause to detain plaintiff.

Plaintiff further alleges that even if Defendants had probable cause to make the arrest, probable cause dissipated once Defendants saw the video of the assault. Pl's Mem. at 8. However, Plaintiff's conclusory allegation that Defendants waited to release her hours after discovering her evidence is insufficient evidence to defeat summary judgment. Plaintiff's evidence "must do more than simply show that there is some metaphysical doubt as to the material facts," *Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Plaintiff's allegations as to when Defendants obtained video footage of the assault constitutes evidence that "is merely colorable [,] not significantly probative," or is based purely on "conjecture or surmise." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted); *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). It is undisputed that Plaintiff was released the morning following the arrest approximately thirty minutes after the victim recanted her identification. D. 56.1, ¶¶59-60.

In sum, because the undisputed material evidence demonstrates that the officers had probable cause to arrest Plaintiff, the Court **grants** Defendants' Motion for Summary Judgment on Plaintiff's false arrest claim.

## II. Due Process Claims

### A. Suggestive Witness Identification Doctrine

Plaintiff contends Defendants violated her constitutional right to due process based on the "suggestive identification" doctrine. "Suggestive procedures are disapproved 'because they increase the likelihood of misidentification.'" *Wray v. Johnson*, 202 F.3d 515, 524 (2d Cir.2000) (quoting *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

Here, plaintiff argues that defendants' identification procedure "was rife with suggestive misidentification." Pl. Opp. at 14. However, plaintiff's claim fails as a matter of law. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007). In *Wray*, the Second Circuit held that a suggestive identification alone is not a constitutional violation. *Id.* Rather, the court explained, "the constitutional violation is that [plaintiff's] right to a *fair trial* was impaired by the admission of testimony regarding the unreliable identification."[5] *Id.* (emphasis added)

Therefore, Plaintiff does not have a "suggestive identification" due process claim because Defendants did not file any formal charges against her and voided her arrest.

### B. "Stigma Plus" Doctrine

Plaintiff alleges that Defendants' alert to the media discussing her arrest violated her due process rights under the "stigma plus" doctrine. Pl. Memo. at 12. To bring a "stigma plus" claim, a plaintiff must allege "a stigmatizing statement plus a deprivation of a tangible interest." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)). Specifically, "a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she

---

[5] "In the context of an identification following a police procedure that was impermissibly suggestive, the due process focus is principally on the fairness of the trial, rather than on the conduct of the police, for *a suggestive procedure 'does not itself intrude upon a constitutionally protected interest.*" *Wray*, 202 F.3d at 524 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113, n. 13, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)) (emphasis added)

claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citation omitted). *see also Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (maintaining that mere reputational harms are insufficient grounds for a federal constitutional tort).

Plaintiff satisfies the "stigma" prong. Crediting Plaintiff's testimony, the NYPD emailed media outlets false and derogatory information by accusing her of committing a hate crime. Though no formal charges were filed against her, Defendants allegedly reported that Plaintiff yelled racial slurs while assaulting a white female and would be charged with assault as a hate crime. The media then published detailed reports of Plaintiff's arrest on the Internet. Pl's Ex. 8; Pl's Ex. 12. In fact, white nationalist groups have Plaintiff's name and employer posted on their websites to this day. *See* e.g., Pl's Ex. 9. Furthermore, Plaintiff testified that her "white neighbors now [view] her differently" and unknown people have come to her apartment building looking for her. P.56.1, ¶ 126.

Plaintiff relies on *Burgos Vega v. Lantz*, 596 F.3d 77 (2d Cir. 2010) to satisfy the "plus" prong. In *Vega*, an inmate challenged an official's decision to assign him a sex treatment needs score of "3", even though only sex offenders were assigned this score and he had not been convicted of a sexual offense. *Id.* at 80. The sex offender label barred him from the prison's tutor program and, allegedly, caused prison officials and fellow inmates to harass him. *Id.* The inmate argued this violated his due process rights and the misclassification "deprived him of a federal constitutional liberty interest in not being falsely stigmatized and a state-created liberty interest in not being labeled as a sex offender absent a criminal conviction." *Id.* The Second Circuit noted that misclassifying an inmate as a sex offender is stigmatizing enough to "implicate a

11

constitutional liberty interest." *Id.* at 81-82.[6] *See also Vitek v. Jones*, 445 U.S. 480, 493 (1980) (misclassification of an inmate as mentally ill and subjecting him to mandatory behavior modification treatment satisfied the "stigma plus" requirement).

Plaintiff, however, does not meet the "plus" requirement. Plaintiff contends the NYPD's portrayal of her as a racist assailant and the resulting public reaction satisfies both the "stigma" and the "plus" requirements. Indeed, considering the events following plaintiff's arrest, being falsely characterized as a violent racist may have very well harmed plaintiff's reputation. However, plaintiff must suffer something more than the consequence of the stigmatizing statement to satisfy the "plus" prong. *See Sadallah*, 383 F.3d at 38; *Greenwood v. New York Office of Mental Health*, 163 F.3d 119, 124 (2d Cir. 1998) (identifying "plus" deprivations of property or liberty interest examples such as losing a government job or losing clinical staffing privileges). Unlike the plaintiff in *Burgos Vega*, who claimed being stigmatized as a sex offender denied him access to prison programs and subjected him to harassment from prison officials and other inmates, Plaintiff claims being stigmatized as a racist caused potentially threatening individuals to visit her apartment building and subjected her to uncomfortable glares from her white neighbors. Certainly, this racist stigmatization may have caused reasonable paranoia. However, these deprivations are better classified as "abstract or speculative," and are not tangible enough to satisfy the "plus" requirement. *See Contiguous Towing, Inc. v. State*, 202 F. Supp. 3d 269, 273-74 (E.D.N.Y. 2016) (rejecting potential financial harm as plus); *Hill v. Donoghue*, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011) (rejecting "rat" label that only harmed plaintiff's safety and reputation as plus).

---

[6] The *Vega* court concluded, however, that the inmate failed to show the classification was false because he did not establish that the statement used to support his classification was false. *Id.* at 82

12

Therefore, Plaintiff fails to identify an appropriate "plus" and the due process claims do not survive summary judgment.

### III. Failure to Intervene

Defendants also move for summary judgment on plaintiff's failure to intervene claim. When an official "observes or has reason to know ... that a citizen has been unjustifiably arrested ... or that any constitutional violation has been committed by a law enforcement official," they may be liable for any preventable harm. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). The official needs a realistic opportunity to intervene and prevent the harm to be held liable. *Id.*

As the Court has discussed, the existence of probable cause eliminates her false arrest claim against the arresting officers. Plaintiff, however, contends that probable cause dissipated once Defendants Carter and Fisch watched video footage of Ms. Benaway's assault and discovered that "her assailant was clearly someone else" as early as 11:25 p.m. and as late as 3:00 a.m. Pl.'s Mem. at 22. According to Plaintiff, Defendants' delayed decision to release her after Ms. Benaway recanted her identification hours later, despite having exculpatory evidence of her innocence, constituted a failure to intervene in her false imprisonment. The Court disagrees.

The Second Circuit has maintained that probable cause "dissipates" where "a police officer's awareness of the facts supporting a defense ... eliminate[s] probable cause." *Grice v. McVeigh*, 873 F.3d 162, 176 (2d Cir. 2017) (quoting *Jocks*, 316 F.3d at 137–38). Furthermore, Plaintiff has a failure to intervene claim where a "police officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence." *Grice*, 873 F.3d at 176. (quoting *Ricciuti*, 124 F.3d at 129) (internal quotation marks omitted). However, the Second Circuit has not determined the amount of time that may elapse between when probable cause dissipates and when an officer must intervene. *See Walker v. City of New York*, 2017 U.S.

Dist. LEXIS 99238, at *10 (E.D.N.Y. June 26, 2017).[7] In other words, the law is unclear as to whether the "opportunity to intervene" arose the moment Defendants discovered Plaintiff was not the assailant and, thus, Defendants "failed to intervene" by not releasing her immediately after the discovery.

The Court relies on *Baker v. McCollan*, 443 U.S. 137, 145, (1979) to guide its decision. In *Baker*, the Supreme Court held that a three-day detention did not amount to a deprivation of "liberty . . . without due process of law" where officials arrested and detained a citizen pursuant to a valid warrant but later discovered the warrant was based on a mistaken identity. *Id*. The court explained that, "mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.' But we are quite certain that a detention of three days…does not and could not amount to such a deprivation." *Id*. (quoting *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)).

Defendants argue the dissipation clock should not begin until Ms. Benaway recanted her identification of plaintiff at approximately 7:45 a.m., and thus, plaintiff's 8:15 a.m. release was reasonable. Even if the Court views the time inference in Plaintiff's favor, considering *Baker*, the time between when probable cause dissipated to when Defendants released Plaintiff from custody (11:25p.m. to 8:00 a.m.) is insufficient to find a "deprivation of liberty" to support a constitutional violation. Defs.' R. 56.1 ¶¶ 59-60. Thus, Plaintiff's failure to intervene claim fails.

### IV. Plaintiff's State Law Claims

---

[7] "The Second Circuit has not addressed the issue of whether an officer can be liable for false imprisonment if, after a lawful arrest, probable cause dissipates and the suspect is not released from custody." *Walker*, 2017 U.S. Dist. LEXIS at *13 n.5. Plaintiff provides no legal authority to support the conclusion that she can maintain a claim for false imprisonment, or failure to intervene, for the time she was held after probable cause dissipated.

14

Under 28 U.S.C. § 1367(c)(3), the Court may exercise supplemental jurisdiction over Plaintiff's remaining state law claims after dismissing "all claims over which it has original jurisdiction." However, the Second Circuit encourages courts to avoid exercising supplemental jurisdiction here: "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991)).

Having dismissed all of Plaintiff's federal law claims, and there being no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Boustany v. Xylem Inc.*, 235 F. Supp. 3d 486, 496–97 (S.D.N.Y. 2017)). Accordingly, those claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 69 and to close this action.

**SO ORDERED**

Dated: March 29, 2019
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**